GEORGE C. CONWAY, ATTORNEY GENERAL *v.* BROOKS EMENY ET AL., TRUSTEES OF THE HILL-STEAD MUSEUM TRUST, ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, JS.

Argued February 3—decided March 31, 1953

*Lucius F. Robinson, Jr.,* with whom was *John C. Parsons,* for the appellants (defendants).

*Anson T. McCook* and *Edward H. Kenyon,* for the appellee (plaintiff).

O'SULLIVAN, J. The attorney general instituted this action as the representative of the public interest in the protection of a testamentary trust intended for a public purpose. General Statutes § 212. The original defendants, each in the capacity of trustee, were eight individuals and the Central Hanover Bank and Trust Company, hereinafter called the bank. The Pope-Brooks Foundation, to be called the foundation, was subsequently cited in as an additional party defendant. The plaintiff's purpose in bringing the action was to obtain an injunction requiring the eight individual trustees to reopen Hill-Stead Museum. All of the defendants save one joined in an answer consisting of admissions and

denials. The answer of the other defendant admitted all allegations of the complaint and was coupled with a counterclaim in the nature of a cross bill in equity wherein advice was sought on the questions stated in the footnote.[1] The court found the issues on the complaint for the plaintiff; it answered the questions in the counterclaim favorably to his position;[2] and it ordered the trustees to reopen the museum. From the judgment rendered, the two corporate defendants and six of the eight individual defendants have appealed.

The finding, which is not subject to material correction, recites the following facts: Theodate Pope Riddle, a resident of Farmington, died on August 30, 1946, leaving a will executed four months earlier. In clause fifth she gave her home, known as Hill-Stead, and its contents to individual trustees to be maintained forever by them and their successors as

---

[1] "(a) Whether under the provisions of [the] will [of Theodate Pope Riddle] this defendant . . . and the other defendants as Trustees of [the] Hill-Stead Museum Trust may properly have considered and may in [the] future properly consider any factor other than public interest in said Museum, in said Trustees' determination that there is or is not sufficient public interest in said Museum to warrant continuing to maintain it, under Clause Fifth of said will.

"(b) Whether under the provisions of said will this defendant . . . and the other defendants as Trustees of said Hill-Stead Museum Trust may properly have considered and may in [the] future properly consider the interests of other beneficiaries or contingent beneficiaries under said will, and particularly the interests of Avon Old Farms School or The Pope-Brooks Foundation as beneficiaries or contingent beneficiaries under Clause Tenth of said will, in said Trustees' determination that there is or is not sufficient public interest in said Museum to warrant continuing to maintain it, under Clause Fifth of said will."

[2] The court answered the questions as follows: "(a) [T]he Trustees . . . may not properly consider any factor other than public interest in said Museum; (b) the Trustees . . . may not properly consider the interests of other beneficiaries or contingent beneficiaries under said will and particularly under Clause Tenth thereof."

a museum for the general public and particularly for the citizens of Farmington and Avon. In clause eighth she placed a trust fund of $400,000 in the hands of the bank and directed that the income be used for the maintenance of the museum, with the added instruction that any income not needed for that purpose should be paid to the foundation. This was a corporation engaged in operating Avon Old Farms School, to be called the school, an educational institution in which the testatrix was greatly interested and for the development of which she had spent, during her life, approximately $7,000,000 in the acquisition of land, the construction and repair of buildings, and operational expenses. She further provided that, if at any time after three years from the probating of her will the trustees of the museum, by an affirmative vote of at least two-thirds, should "in their absolute discretion determine that there is not sufficient public interest in the Museum to warrant continuing to maintain" it, the trust created by clause fifth should terminate, and all of the museum property, real and personal, together with the $400,000 trust fund set up under clause eighth should be transferred to the bank in trust for the benefit of the school through the medium of the foundation.

In 1947, the trustees named by the testatrix received the gift described in clause fifth and, shortly thereafter, opened Hill-Stead as a museum. The main building is a large, well-constructed and well-preserved mansion which had served as the testatrix' home. Built around 1900, it represents the finest type of residential architecture in vogue at the turn of the century. It stands in the midst of lawn and trees, commands a sweeping view of the Farmington Valley and has ready access to the main highway

from Hartford. The building is furnished with valuable paintings and engravings, American and English furniture, Oriental rugs, ancient porcelains and bronzes, rare books and other objects of art. The testatrix was deeply attached to her home. She treated it with the greatest care and regarded its treasures as a memorial to her parents. In her will, the testatrix directed that she, her husband, her godson and her old servants were to be buried in a plot upon the grounds which she had selected.

The museum enjoys a wide reputation and is highly regarded by experts. It is classified as a "house museum" of medium size and as "historic" in that it represents a particular period of importance that has now ended. From the time of its opening in April, 1947, citizens of Farmington and Avon and members of the general public have visited it and derived special benefits from its educational, artistic and historical features. It has been enjoyed by people of widely varied interests and from all walks of life. From its start, it has commanded a substantial attendance and public interest, although its existence was publicized only to a minimal degree.

On December 15, 1950, William S. Cowles, chairman of the finance committee of the foundation, wrote a letter to one of the trustees of the museum. In it he set forth the dire need of immediate financial help for the school; he quoted a resolution, adopted by the directors of the foundation, reciting their belief that, were the museum to be closed, ample income would become available to run the school; he referred to the great interest of the testatrix in the school; he suggested that the trustees of the museum ought to bear this in mind when considering whether there was sufficient public interest in the museum to war-

rant its continuance; and he pointed out that the assets which would come to the benefit of the school, if the museum were discontinued, had a value in excess of $1,000,000. A copy of this letter was sent to each of the other museum trustees. Accompanying it was a notice from the secretary of the trustees that, at the request of the aforementioned Cowles, a special meeting of the trustees would be held on January 11, 1951.

The defendant Brooks Emeny was both a trustee of the museum and a director of the foundation. Under date of January 5, 1951, he submitted to each of his fellow trustees on the museum board a lengthy memorandum to the effect that, although public interest in the museum had been creditable, the needs of the school should be regarded as of paramount importance, and that if the museum were to remain open the school would be forced to close.

All of the trustees attended the special meeting. A motion to close the museum was lost, four voting thereon in the affirmative and four in the negative. At the next regular meeting held on April 30, 1951, a similar motion was carried, only two of the eight trustees voting against it. There had been no change in public interest between the two meetings. At both the January and April meetings, urgent representations were made, particularly by the defendant Brooks Emeny, that the financial condition of the school was precarious, and that it was more important to save the school than the museum.

Some of those voting in the affirmative took into consideration their personal ideas of what the testatrix would wish to do if she were living, financial difficulties which they feared the museum might encounter in the future, the financial plight of the school, and that the museum should be closed in

order that the school might remain in existence. For example, the vote of the defendant Brooks Emeny was based primarily upon the financial needs of the school and not upon the question of public interest in the museum, while the vote of the defendant Grace Flandrau was cast primarily because she favored the school over the museum. No trustee who voted in favor of the motion was actuated solely or principally by the belief that there was not sufficient public interest in the museum to keep it open. Public interest was not even a topic of discussion at the meeting of April 30, 1951. All of the trustees of the museum and all of the directors of the foundation are honorable ladies and gentlemen. None of them was actuated by a personally selfish motive.

The vote of April 30, 1951, if carried into effect, would terminate the trust, permanently close Hill-Stead, scatter its contents, frustrate the testatrix' beneficent conception of an art center for that section of Connecticut, destroy the museum's educational and artistic value to the general public and work an irreparable injury for which there is no adequate remedy at law. The court concluded that, in closing the museum for the reasons which prompted them, the trustees abused their discretion. The only question upon this appeal is whether the court was correct in so holding.

The answer to this question hinges on the interpretation to be accorded that part of clause fifth which authorizes the discontinuance of the museum. In reaching that interpretation, a court is confined to the intent which finds expression in the words used. *Griswold* v. *First National Bank,* 134 Conn. 410, 414, 58 A.2d 256; *Chase National Bank* v. *Guthrie,* 139 Conn. 178, 182, 90 A.2d 643. "The question is of course not what did the testatrix mean to

say but what did she mean by what she did say. . . ." *Mitchell* v. *Reeves,* 123 Conn. 549, 556, 196 A. 785. In speaking of the power of the trustees to close the museum, the testatrix used the phrase "in their absolute discretion." It is apparent from the presence of the word "absolute" that she intended to give them considerable discretion. *Auchincloss* v. *City Bank Farmers Trust Co.,* 136 Conn. 266, 269, 70 A.2d 105. The use of the qualifying adjective, however, did not give unlimited discretion, and the grant of authority, broad as it was, did not necessarily remove the trustees from judicial supervision. Restatement, 1 Trusts § 187, comment j; 2 Scott, Trusts, p. 987. To the extent to which the trustees had discretion, the court will not attempt to control their exercise of it as long as they have not abused it. *Bridgeport* v. *Reilly,* 133 Conn. 31, 36, 47 A.2d 865; *McCarthy* v. *Tierney,* 116 Conn. 588, 591, 165 A. 807. But the law will not tolerate its abuse, however great the creator of the trust intended the grant of discretion to be. 2 Perry, Trusts & Trustees (7th Ed.) p. 862.

The discretion authorized by Mrs. Riddle is not as absolute as it is claimed to be. *Greenwich Trust Co.* v. *Converse,* 100 Conn. 15, 26, 122 A. 916. This is due to the manner in which she circumscribed its exercise. The testatrix imposed three conditions which had to be satisfied before the museum could be closed. In the first place, three years from the probating of the will must have passed; during that time the trustees were obliged to keep the museum open. Secondly, two-thirds of the trustees had to vote affirmatively to close it. Neither of these conditions involved the exercise of any discretion. The final condition is that the trustees shall "in their absolute discretion determine that there is not sufficient public interest in the Museum to warrant" their

maintaining it. It is only with respect to this third condition that discretion plays any part. But it is also true that in stating this condition the testatrix set the standard for exercising discretion.

It is urged by the appealing defendants that this standard not only permitted the trustees to weigh factors other than public interest but also demanded this of them. They say, for example, that while attendance at the museum ought to be considered, so too should the financial plight of the school, as a remainder beneficiary. They argue that attendance alone is not the only, and still less the controlling, factor, since, if this were so, then at some point the trustees would be required to decide the unanswerable question whether one more visitor makes for sufficiency or one less for insufficiency. This overlooks a vital matter. It was undoubtedly this very reason that prompted the testatrix to give the trustees "absolute discretion" to determine when attendance was insufficient.

The stubborn fact which the defendants cannot avoid is that, wisely or not, the testatrix established a standard to guide the trustees and to limit their action. This was whether there was sufficient public interest in the museum to warrant continuing to maintain it. It was the duty of the trustees to conform strictly to the directions which the testatrix gave. Trustees have no powers not expressly or impliedly conferred on them by the terms of the trust. Restatement, 1 Trusts § 186. Their obligation to obey the instructions of the donor of the trust is the cornerstone upon which all other duties rest. 4 Pomeroy, Equity Jurisprudence (5th Ed.) § 1062; *Healy* v. *Loomis Institute,* 102 Conn. 410, 424, 128 A. 774. The failure of the trustees to apply the standard of public interest in reaching their decision to

close the museum was a violation of their duty. They took unto themselves a power not granted them by the will.

A trustee must always be loyal to his trust. 2 Scott, Trusts § 170. In his dealings with his beneficiary, he must not be influenced by the interest of a third party. 3 Bogert, Trusts & Trustees, § 543; Restatement, 1 Trusts § 170, comment p. "Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. (*Wendt* v. *Fischer,* 243 N.Y. 439, 444 [154 N.E. 303]). Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd." *Meinhard* v. *Salmon,* 249 N.Y. 458, 464, 164 N.E. 545.

To be sure, the trustees did not act for personal advantage. Indeed, they appear to have been motivated by a desire to assist a worthy project. They were, nevertheless, trustees of the museum. This was an institution in which the testatrix had faith and which she had handsomely endowed to ensure its perpetuation. As long as it commanded what the trustees, acting in good faith, should believe to be sufficient public interest, it was to remain open. However commendable their purpose on behalf of the school, the trustees were unwarranted in ignoring the sole standard which the testatrix had pro-

622

vided, and they cannot justify their failure to measure up to this standard of loyalty to their cestui. The court was correct in its judgment.

There is no error.

In this opinion the other judges concurred.