WILLIAMS MEMORIAL INSTITUTE *v.* WILLIAM L. BEERS, ATTORNEY GENERAL, ET AL.

SUPERIOR COURT     NEW LONDON COUNTY     FILE NO. 22022

Memorandum filed March 23, 1954.

*McGuire & McGuire*, of New London, for the Plaintiff.

*William L. Beers*, Attorney General, and *Thomas J. Conroy*, Assistant Attorney General, for the Defendants.

TROLAND, J. This is an action wherein the plaintiff seeks the advice of the court as to its powers and authority to execute its duties according to law, and for an order in accordance with § 8234 of the General Statutes, authorizing the plaintiff to sell the land and building devised and built under the terms of the will of Harriet Peck Williams, together with its other real estate, and the investment of the proceeds as required by law.

Harriet Peck Williams, late of Norwich, deceased, by her will dated April 4, 1873, duly admitted to probate in the probate district of Norwich on October 30, 1880, devised a certain tract of land on Broad Street in New London to her trustees therein named, "to be by them held in trust for the purposes only of locating thereon a building for a female high school as hereinafter provided to be forever used for that and no other purpose." This land was then valued at $10,000. Harriet Peck Williams in said will further gave all of her residuary estate to said trustees "to apply to the promotion and advancement of female education," as therein set forth. The trustees were directed to erect and suitably furnish a proper

building for a female high school on said lot on Broad Street, and the income from remaining funds was to be invested, and as much as required, forever expended in the support of said school at the discretion of the board of trustees. Said high school, by provision of the will, was to be forever called "The Williams Memorial Institute." The trustees were directed to apply to the General Assembly of Connecticut for an act of incorporation to enable the trustees the more conveniently to carry out the provisions of the trust. The plaintiff is the Connecticut corporation created by special act of the General Assembly, approved March 8, 1881, for the purpose of carrying into effect the trust created by the will of Harriet Peck Williams described above. 9 Spec. Laws 26. On April 29, 1881, the surviving trustees conveyed to Williams Memorial Institute a tract of land on Broad Street bounded and described as follows: Northerly by Broad Street; easterly by Brainard Street; southerly by Mercer Street; and westerly by Gibson Street.

The residuary estate distributed to the plaintiff amounted to approximately $147,000. The construction of a building for said high school was completed in 1891 at a cost of approximately $85,000. At the time of Mrs. Williams' death the population of New London was approximately 10,537 and when Williams Memorial Institute was opened the population of New London was approximately 13,757. From the year 1891 to June of the year 1951 the city of New London did not maintain a high school, and Williams Memorial Institute furnished a full course of secondary education for girls in the city of New London in partial performance of the city's duty to provide such education. The city continued to grow in population and the number of girls seeking high school education continued to increase. In November, 1917, friends of the school, the widow and chil-

dren of Frank L. Palmer of New London, who had served the school for many years as a corporator, presented to the school a tract of land and building thereon, adjoining the school property on the west, bounded northeasterly by Broad Street, southeasterly by Gibson Street, southwesterly by Mercer Street, and northwesterly by Williams Street. Said tract of land was conveyed to plaintiff without restriction as to use or disposition. It has been used for various purposes, but, known as Palmer Hall, it is now used solely in the operation and as part of said school.

For many years prior to 1933 the city of New London annually paid the tuition fee of its scholars at plaintiff's school under authority of chapter 187 of the Public Acts of 1903, and from 1921, in accordance with the city charter, appropriated money in aid of the plaintiff. Such payment of tuition and appropriations were made in part payment of plaintiff's costs of educating the city's said high school students. By 1933 the population of the city had increased to more than 30,000, and the facilities of the school were inadequate to accommodate all high school pupils desiring to attend. At this time, at request of the city of New London, an additional building was constructed partly on the land devised under the will of Harriet Peck Williams and partly on the land the gift of the Palmers, at a cost of about $180,000. This additional building, known as Buell Hall, increased the capacity of the school to about 1000 students. The city of New London loaned $150,000 to Williams Memorial Institute to assist in the construction of Buell Hall. From May 16, 1933, to June, 1953, Williams Memorial Institute furnished high school education to girls entered from the city of New London, for which the school was paid in accordance with the terms of an agreement with the city of New London entered into at the time the funds for Buell Hall were borrowed from the

city. In June of 1953 this agreement was terminated by the city and the city now conducts its own high school for all its pupils.

The withdrawal of pupils and financial support by the city of New London creates such a change in circumstances as to make it not only impracticable and inexpedient but impossible to carry out the objects intended by Harriet Peck Williams in her will at the present site. The school has a capacity of about 1000 pupils, with about 200 now in attendance, and the reasonable expectation is that the number of its pupils will probably not exceed 125 in the future. The original Williams building now comprises only a portion of the whole of the assets of the school. It is an old building, now closed, uneconomical to use and difficult and expensive to alter. Buell Hall, the principal real asset of the school, is largely constructed on the original Williams lot, and its sale for school purposes would require the conveyance of much of the Williams land. The remaining land would be inadequate for the construction of a new smaller school. Williams Memorial Institute has not the resources to continue to operate a school for 125 girls in a plant with a capacity for 1000 students. To continue to so operate would be wasteful of the assets and defeat the accomplishment of the purpose of the trust. To remain inoperative would likewise be wasteful, improper and a violation of the trust. Williams Memorial Institute has no power or authority to give its assets to the city of New London or any other public authority and abandon its trust. A trustee must always be loyal to his trust. 2 Scott, Trusts, § 170; *Conway* v. *Emery*, 139 Conn. 612, 621. The obligation of the trustees to obey the instructions of the donor of the trust is the cornerstone upon which all other duties rest. 4 Pomeroy, Equity Jurisprudence (5th Ed.) § 1062; *Healy* v. *Loomis Institute*, 102 Conn. 410, 424.

Harriet Peck Williams was a religious woman. She had a deep interest in advancing the education of young women. It was her intention that at all times the school established by her should be a private high school, as distinguished from a public school under the control of state and local educational authorities and subject to the limitations and restrictions imposed by law on public schools. This point is clearly emphasized by the express provision in her will, where she says: "It is *my will* and *desire* that in the general instruction and management of the school all due respect and reverence shall be paid to the truths and doctrines of our Holy Religion and that the teachers shall endeavor to have the blessed word of God as revealed in the Bible exert a prominent influence on the mind and heart of the pupils."

The facts in evidence indicate that Williams Memorial Institute desires to carry out its trust. The circumstances have so changed since the creation of said trust, and the condition of the real estate has so changed since the creation of said trust, that execution thereof in exact accordance with the terms of the will of Harriet Peck Williams, on the site on Broad Street, has become impossible and would fail to secure the dominant objects manifestly intended by Harriet Peck Williams in said will. The court finds that the best interest of said trust estate requires the sale of the devised real estate, together with the building thereon, and all other real estate owned by the plaintiff on said Broad Street, and the investment of such part of the proceeds in other real estate in New London as may be deemed by plaintiff reasonably necessary and proper to secure the continuance of operation of its school in harmony with the will and codicil of Harriet Peck Williams except for location, and to invest the balance of such proceeds if any in other real estate or

as trust funds generally may be by law invested for the benefit of such school, and to hold all the same to secure the object for which said trust was originally created as nearly as may be, and as indicated above. Restatement, 2 Trusts § 381; General Statutes § 8234.

Judgment may enter accordingly without costs to any party.