THE CONNECTICUT BANK AND TRUST COMPANY, TRUSTEE *v.* KATHARINE R. LYMAN ET AL.

KING, MURPHY, MELLITZ, ALCORN and BORDON, Js.

274

Argued March 10—decided April 11, 1961

*Max H. Schwartz,* with whom was *Robert J. Engelman,* for the named defendant.

*Robert Ewing,* pro se as guardian ad litem for the defendant Brenda Verlaine et al.; with him, on the brief, was *Robert L. Rosensweig.*

*Henry S. Robinson, Jr.,* appeared for the plaintiff.

KING, J. Richard S. Lyman, hereinafter referred to as the settlor, was born in Hartford in 1891, was

graduated from Yale College in 1913, studied sanitary engineering at the Massachusetts Institute of Technology, and served in World War I. Thereafter, he entered Johns Hopkins Medical School, from which he was graduated with an M.D. degree in 1921. His interest lay in research and teaching rather than in practice, and he spent much of his professional career in foreign cities, including London, Munich and Shanghai.

In 1928, while living in Rochester, New York, he entered into an agreement with the plaintiff by which he established an inter-vivos trust of which the plaintiff was designated trustee. The trust agreement was subject to modification at any time by agreement of the parties to it, and to revocation at any time by the settlor. In fact, it was amended on February 21, 1930, April 2, 1930, December 19, 1932, February 17, 1936, August 29, 1936, September 30, 1938, and January 8, 1940. The final amendment of 1940 made the trust no longer revocable, or subject to modification except as to certain charities named as contingent beneficiaries.

In early 1930, the settlor and his first wife, Pauli, were divorced. Two children, the defendants Sonya Lyman Burgher and Richard Peter Lyman, had been born of this marriage. Mrs. Burgher, by her first marriage, had one child, the defendant Brenda Verlaine, a minor, who is represented in this proceeding by a guardian ad litem. The settlor, subsequent to his divorce from Pauli, was in Germany. In 1932, while there, he married the named defendant, Katharine R. Lyman, with whom he lived until his death on June 13, 1959. No children were born of this marriage.

In 1921, the settlor had established an agency account with the plaintiff. Largely because of heavy

expenditures for his own research, he made inroads on the principal of the agency account as well as on the principal of the trust account, so that by November 20, 1956, the agency account was exhausted and therefore terminated. Thereafter, payments from the principal of the second part of the trust corpus, hereinafter described, were made to the settlor, on his request, in a total amount in excess of $16,000, the largest single payment being in the amount of $8000.

By amendment in February, 1936, the trust corpus was divided into two equal parts. It is sufficiently accurate for the purposes of this case to describe the first part as providing for a life income to Pauli with remainder over, upon her death, to the two children. Pauli, who had remarried, died October 9, 1957, and thereafter the principal of this portion of the trust, which then amounted to nearly $900,000, was equally distributed, outright, to the two children, Sonya and Peter, and this portion of the trust accordingly terminated.

The second part of the trust, as modified in 1940, contained the following provision, the proper construction of which is the real matter here in controversy: "(A) The entire net income shall be paid to the . . . [settlor], or as he may from time to time direct, throughout his life, and, after his death, such net income shall be paid over to Katharine R. Lyman, wife of the . . . [settlor], if she is then living and throughout her life. Payments from the principal shall be made to or for the benefit of the . . . [settlor] either on the judgment of the Trustee as to their being needed because of his illness or absence or other emergency, or at the written request of the . . . [settlor] or for both of said reasons, and in like manner, after the death of

the . . . [settlor], payments of principal shall be made to or for the benefit of said Katharine R. Lyman either on the judgment of the Trustee as to their being needed because of her illness or absence or other emergency, or at the written request of said Katharine R. Lyman or for both of said reasons."

It was further provided that upon the death of the survivor of the settlor and his wife, Katharine R. Lyman, the trust should terminate and "the property constituting the same" should be paid over to the settlor's issue, per stirpes, and in default of such issue to certain designated charitable and educational institutions which were made defendants in this action. Five weeks after the death of the settlor, Katharine R. Lyman, hereinafter called the defendant, made written request to the trustee for a payment from principal of $25,000. The trustee immediately forwarded this sum to her. About five months later, she again wrote the trustee, requesting that the entire principal be paid her forthwith. The trustee then instituted this action for a construction of the quoted provision.[1]

The defendant claims that she is entitled to demand and receive payment of the entire corpus "at . . . [her] written request." The guardian ad litem claims that while it may be that the defendant could, by a series of requests, if each was based on a reasonable justification, obtain payments from time to time even to the extent of ultimately ex-

---

[1] The first question reserved, which alone need be answered, is as follows: "Under and pursuant to the applicable provisions of the original trust agreement and amendments thereto (attached to the Stipulation of Facts as Schedule A), is the Defendant, Katharine R. Lyman, entitled to receive from the Plaintiff Trustee the entire principal of said trust upon her written request therefor as a matter of right?"

hausting the entire principal, she cannot, without reason, accomplish that result in one or two steps, as she is attempting to do. There is no claim that she has need of any such amount of money at this time. Her life income from the trust amounts to almost $20,000 a year. In addition, she has other assets which produce an income of about $5000 a year. Obviously, the effect of a payment of the entire principal is to terminate this portion of the trust and destroy any possiblity that from it the settlor's issue, or the contingent charitable beneficiaries, will receive anything.

We have rigorously adhered to the rule that a valid trust should be protected against unauthorized change, alteration or termination by agreement on the part of the beneficiaries. See cases such as *Adams* v. *Link*, 145 Conn. 634, 638, 145 A.2d 753. And even though an extremely liberal power of invasion of principal is given to, or for the benefit of, an income beneficiary, if any purposes of, standards for, or limitations on, the exercise of that power are expressed, we have required their enforcement, and have refused to permit an untrammeled invasion of principal where discretion was involved. See, for instance, such cases as *Hull* v. *Culver*, 34 Conn. 403, 405; *Peckham* v. *Lego*, 57 Conn. 553, 554, 19 A. 392; *Hull* v. *Holloway*, 58 Conn. 210, 215, 20 A. 445; *Little* v. *Geer*, 69 Conn. 411, 415, 37 A. 1056; *Hooker* v. *Goodwin*, 91 Conn. 463, 467, 99 A. 1059; *Bishop* v. *Groton Savings Bank*, 96 Conn. 325, 330, 114 A. 88; *Guaranty Trust Co.* v. *New York City Cancer Committee*, 145 Conn. 542, 546, 144 A.2d 535.

On the other hand, we cannot rewrite a will or a trust instrument. The expressed intent must control, although this is to be determined from reading the instrument as a whole in the light of the cir-

cumstances surrounding the testator or settlor when the instrument was executed, including the condition of his estate, his relations to his family and beneficiaries, and their situation and condition. "The construing court will put itself as far as possible in the position of the . . . [settlor], in the effort to construe . . . [any] uncertain language used by him in such a way as shall, conformably to the language, give force and effect to his intention." *Hoops* v. *Stephan,* 131 Conn. 138, 143, 38 A.2d 588. But "[t]he quest is to determine the meaning of what the . . . [settlor] said and not to speculate upon what he meant to say." *Chase National Bank* v. *Guthrie,* 139 Conn. 178, 182, 90 A.2d 643; *First National Bank & Trust Co.* v. *Parish of St. Thomas' Church,* 141 Conn. 489, 497, 107 A.2d 246.

Here, the same provisions as to invasion of principal were used in the case of the defendant as were used by the settlor in describing his own powers of invasion. The clear language is that payments of principal shall be made "at the written request" of the defendant. There is no uncertainty in this language. It is in sharp contrast to the provision, applicable to payments from principal made by the trustee on its own initiative, that they should be made to or for the benefit of the defendant "on the judgment of the Trustee as to their being needed because of her illness or absence or other emergency."

It is quite apparent that the settlor had two thoughts in mind with respect to invasion of the principal. The first was to order payments of principal to be made by the trustee, suo motu, on the basis of need. This would be particularly desirable in case the income beneficiary suffered any disability, mental or physical, of a type which seriously

impaired or destroyed the power of communication or of judgment. The second was to order payments of principal to be made by the trustee at the untrammeled, written request of the beneficiary. Where, as here, the power of invasion is unconditionally given, it may not be restrained. We cannot rewrite the trust instrument to take it away.

The defendant correctly concedes in her brief that the trust in this case would persist so long as any of the principal remained and would operate to give any principal remaining at her death to the remaindermen. "[A] gift over is not invalid where a trust is created even though the life beneficiary has an unrestricted power to call for or dispose of the principal." 2 Scott, Trusts (2d Ed.) p. 952. Even in cases of legal life estates, it is held that language conferring on the life tenant a broad power of invasion does not convert the life estate into a fee. *Brown* v. *Potter,* 114 Conn. 441, 444, 159 A. 275; *Burley* v. *Maguire,* 127 Conn. 242, 247, 16 A.2d 358. This is so regardless of the fact that, as in each of the two cases cited, the power of invasion conferred was unrestricted, so that the remainder might amount to little or nothing. Here, the power of withdrawal or invasion is general and unlimited, and is neither expressly, nor by implication, given for the beneficiary's support, comfortable maintenance or need, or for any similar purpose which would call for the exercise of a reasonable discretion in conformance with expressed, or necessarily implied, standards, purposes or limitations. See, for instance, *Little* v. *Geer,* 69 Conn. 411, 415, 37 A. 1056. Courts will, of course, protect against an abuse of discretion in any equitable matter. *Conway* v. *Emeny,* 139 Conn. 612, 619, 96 A.2d 221. Here, however, no discretion is involved. The power

to request payments of principal is neither based on, nor does it call for, the exercise of discretion in conformance with any standards, purposes or limitations, express or implied. The right to invade is left to the defendant's desires.

It is hardly necessary to point out that we are not concerned with a legal life estate with remainder over. Where such an estate is created, or where the life tenant is himself constituted a trustee, he occupies a quasi-fiduciary or fiduciary relationship with respect to the remaindermen, and it is frequently held that even an apparently unlimited power of withdrawal or invasion is subject to an implied limitation that it be exercised in good faith and not for the dominant purpose of preventing the remainder from going to the remaindermen. Cases of this type are collected in an annotation in 2 A.L.R. 1243, supplemented in 27 A.L.R. 1381, 69 A.L.R. 825, and 114 A.L.R. 946. Such cases, although stressed by the guardian ad litem, actually are not in point. We are not concerned with a life estate, in law, but with a trust, in equity. The defendant is neither an actual nor quasi trustee for anyone.

"In the field of testamentary [or trust] construction, precedents are usually inconclusive, since the same or substantially similar expressions seldom occur in different wills [or trust agreements]. . . . Precedents are entitled to little weight where they do not involve precisely analogous . . . language, used by testators [or settlors] surrounded by like circumstances at the execution of their wills [or trust agreements]." *Hartford National Bank & Trust Co.* v. *Harvey,* 143 Conn. 233, 243, 121 A.2d 276; *Hartford Trust Co.* v. *Wolcott,* 85 Conn. 134, 138, 81 A. 1057. In each case, it is the intention ex-

pressed by the particular language employed which must be construed. *Mansfield* v. *Shelton,* 67 Conn. 390, 395, 35 A. 271.

The presence of a remainder clause is sometimes a sufficient indication of an intention to circumscribe an otherwise apparently unbridled power of invasion. *Mansfield* v. *Shelton,* supra, 394. But see cases such as *Burley* v. *Maguire,* 127 Conn. 242, 247, 16 A.2d 358. Here, however, the presence of a remainder provision is without significance. The settlor had no will, and to avoid possible intestacy a remainder provision would be necessary under the alternative power of invasion of principal conferred on the trustee, suo motu, in case of need. Need could hardly justify invasions which would exhaust a corpus of the size which the settlor must have envisioned, even when the provision was made in 1940. The presence of the remainder provision is at most an indication of the expectations of the settlor as to the use which the defendant would make of the unrestricted power of invasion expressly given her. See cases such as *Clark* v. *Baker,* 91 Conn. 663, 666, 101 A. 9. This is quite a different thing from his expressed intent. Even if it were clear that the settlor had mistakenly reposed confidence in his wife in regard to the use which she would make of her uncircumscribed power of invasion, we could not correct that error of judgment by rewriting the trust instrument to curtail a power expressly granted. The settlor's expectations as to what action the defendant would take and his clearly expressed intention to give her full freedom to take such action as she pleased are two different things. It is only the latter with which we are concerned. "[E]ven if future events did not accord with . . . [the settlor's] anticipations, the eventu-

alities must be adapted to the terms of the trust, not the trust to the events." *Hills* v. *Travelers Bank & Trust Co.*, 125 Conn. 640, 646, 7 A.2d 652.

Our answer to the first question in the reservation is "Yes"; no answer to the second question is required.

In this opinion the other judges concurred.