[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO DISMISS
The plaintiff Attorney General Richard Blumenthal brings this action against the defendant Robin Barnes alleging in three counts that the defendant breached her fiduciary duty to Village Academy, Inc., a non-profit corporation. The defendant moves to dismiss on the grounds of lack of standing — that there is no authority for the Attorney General to bring such an action in his own name.
THE UNDERLYING CONTROVERSY
Certain facts seem to be undisputed. The defendant was the president and a member of the board of directors of Village Academy, Inc. Village Academy, Inc., was a private non-stock corporation that received a tax exemption as a charitable organization under I.R.S. Code Section 501(c)(3) in 1997. Also in 1997, pursuant to Conn. Gen. Stat. § 10-66bb, the corporation was granted a charter from the State Board of Education to operate a public, non-sectarian school for elementary school students in New Haven.
The corporation received its funding from the state on a per-pupil basis pursuant to Conn. Gen. Stat. § 10-66ee. It received approximately $490,000 for fiscal year 1998, and again for fiscal year 1999. A second source of revenue was from federal funds through a start-up grant and Title I grant. A third source of revenue was from charitable donations. The parties agree that this last source generated about $8000 — a relatively small sum in comparison to the other revenue sources. Finally the school obtained a loan from the Connecticut Health and Educational Facilities Authority (CHEFA) of around $140,000.
The school was located at 95 Fitch Street and 39 Onyx Street, adjacent parcels in New Haven. Those parcels were purchased by the defendant Robin Barnes on May 9, 1997, from Joseph and Vincent Ruggiero. The consideration for the property, sold to Barnes for a purchase price of $110,000, was a promissory note and mortgage deed CT Page 4740 for the entire sum, made payable on May 1, 2000. On May 31, 1997, Village Academy, Inc., leased the premises from the defendant at an annual base rent of just under $55,000. The school opened its doors there in August of 1997.
The defendant was also an employee of or consultant to the school, receiving compensation of $55,666 through May 1998. Although an Employment Agreement and a Consulting Agreement were signed for the future school years ending in 1999 and 2000, it is unclear whether any sums were actually paid to the defendant under these contracts for any services rendered.
At some point the State Department of Education set in motion an investigation of the affairs of the corporation and the school.[1]
The plaintiff has filed this lawsuit based at least in part on information generated from an audit performed by a certified public accountant retained by the State. The plaintiff's complaint is in three counts. The first count alleges that when the defendant arranged for the school to rent the Fitch Street property and directed that funds belonging to the corporation be used for extensive renovations, she breached her fiduciary duties to the corporation. The second count alleges that the defendant breached her fiduciary duty to the corporation by entering into the employment and consulting arrangements. The third count alleges that when the defendant failed to make the payments due on the promissory note to the Ruggieros placing the property at risk of foreclosure, she breached her fiduciary duty to the corporation. The prayer for relief asks for injunctive relief prohibiting the defendant from exercising any authority on behalf of the corporation. It further asks that the court enter a judgment holding the defendant liable for the excess benefits she received and to "disgorge" this sum, in addition to treble damages. The plaintiff has also filed an application for a prejudgment remedy in the amount of $375,000.
The defendant has appeared by counsel and has filed a motion to dismiss. The defendant claims that the plaintiff in this action, Richard Blumenthal in his capacity as Attorney General of the State of Connecticut, lacks standing to prosecute this claim.
THE MOTION TO DISMISS
The defendant moves to dismiss under Conn. Practice Book § 10-31
(a)(1) which provides that a motion to dismiss is the proper vehicle to challenge the subject matter jurisdiction of the court. The defendant cites a line of cases holding that if a party "is found to CT Page 4741 lack standing, the court is without subject matter jurisdiction to determine the cause." Tomlinson v. Board of Education, 226 Conn. 704,717, 629 A.2d 333 (1993). This constitutes a threshold issue, then, which the court must confront before determining whether the action may proceed as framed.
THE STANDING OF THE PLAINTIFF
The plaintiff premises his authority to maintain this action on two bases. In ¶ 26 of the First Count of the complaint, repeated in the subsequent two counts, the plaintiff alleges: "At common law and pursuant to Conn. Gen. Stat. § 3-125, the Attorney General is authorized to bring this action to remedy said breach of duty." The breach of the duty to which the paragraph refers is the alleged breach of the fiduciary duty owed by the defendant to the corporation.
The question presented is whether the Attorney General has authority either under the common law or under 3-125 to bring this action.
THE COMMON LAW
The Office of the Attorney General of the State of Connecticut was created in 1897 by act of the Connecticut General Assembly.[2] It was not until 1970 that it became a Constitutional office. Connecticut Constitution, Art. IV, Sec. 1.
The Connecticut Constitution does no more than "constitutionalize" the office, however. The scope of the duties of the Attorney General are prescribed by statute. Conn. Gen. Stat. § 3-125 delineates the general duties and authority of the office. Among these is the duty ". . . to represent the public interest in the protection of any gifts, legacies or devises intended for public or charitable purposes."
As a creature of statute, the office has no "common law" authority. While a lawyer appointed to represent the public — an attorney general as opposed to The Attorney General — was recognized as having certain common law powers prior to 1897, see, e.g. Dailey v. City ofNew Haven, 60 Conn. 314 (1891), no Connecticut case since the enactment of the statute in 1897 creating the statewide office of the Attorney General has recognized any such common law authority.[3]
To be sure, the office has a broad range of powers, including the power in specific circumstances to commence lawsuits, including those in which the Attorney General is the nominal plaintiff. See, e.g. Conn. Gen. Stat. § 3-129 (A.G. may bring action against a CT Page 4742 practitioner of the healing arts to revoke fraudulently obtained license); § 3-129a (A.G. may bring action against corporation engaged in certain unlawful activities to forfeit corporate charter); §31-51z (b) (A. G. may bring action to enjoin employer from violating workplace drug testing laws); § 42-110p (A.G. may petition to dissolve corporation found to violate an injunction under the Connecticut Unfair Trade Practices Act).[4] But the General Assembly defines the limits of the Attorney General's powers. In determining whether the Attorney General has standing to commence this lawsuit, the court must look not to common law, but to the General Statutes.
STATUTORY AUTHORITY UNDER CONN. GEN. STAT. § 3-125
The plaintiff also asserts that he has statutory authority under Conn. Gen. Stat. § 3-125 to commence this lawsuit "to represent the public interest in the protection of any gifts, legacies or devises intended for public or charitable purposes." It is not disputed that there are such gifts involved in this case, although they are quite small in comparison to the other funds[5] made available to Village Academy, Inc., which were allegedly misused by the defendant.
There is certainly authority for the proposition that the Attorney General may commence an action to cause judicial oversight of the use to which charitable corporations and others put "gifts . . . intended for public or charitable purposes." See, e.g. Blumenthal v. White,
supra, (Attorney General commenced action with co-plaintiff City of Bridgeport for declaratory judgment that plan for land previously deeded for public park was in conformance with testator's intentions); Lockwood v. Killian, 172 Conn. 496, 375 A.2d 998 (1977), rev'd and remanded on other grounds, later affirmed in Lockwood v.Killian, 179 Conn. 62, 425 A.2d 909 (1979) (Attorney General filed counterclaim for removal of certain restrictions regarding race and sex from trust instrument); Conway v. Emeny, 139 Conn. 612,96 A.2d 221 (1953) (Attorney General commenced action for injunction to prevent trustees from closing museum that testator had funded and intended be kept open); Healy v. Loomis Institute, 102 Conn. 410,128 A. 774 (1925) (Attorney General commenced action to prevent school's trustees from terminating girls co-education that had been intended by deceased settlor of trust).
These cases all involve whether the original charitable purpose was being fulfilled by the trustees, board of directors, or other governing body of the charity. None involved the issue of whether an officer or employee in charge of administering the gift was engaged I CT Page 4743 in fraud or self-dealing to the detriment of the "public or charitable purpose." The court sees no conceptual reason why the authority of the Attorney General could not extend as well to cover the misapplication of gifts to a charitable or public organization through alleged fraud as to an arguably more benign misapplication through, say, closing a museum. See Conway v. Emeny, supra. Indeed the language of Conn. Gen. Stat. § 3-125 contains no such limitation.
Nor does the statute contain a percentage or sum as a threshold amount for the invocation of the Attorney General's authority. That the gifts here amount to less than 2% of the organization's budget is not relevant to whether the statute confers standing on the Attorney General to commence this action. Rather this may be relevant, if at all, in considering whether the plaintiff has stated a valid claim against the defendant or in determining what relief may properly be granted given the interest of the plaintiff.
CONCLUSION
The plaintiff has the statutory authority under Conn. Gen. Stat. §3-125 to commence this action. The Defendant's Motion to Dismiss is denied.
FURTHER SCHEDULING
The plaintiff's application for prejudgment remedy is hereby scheduled for Monday, May 15, 2000, in Courtroom 5-C at 2:00 P.M.
Patty Jenkins Pittman, Judge