ESTATE of Eugene F. McCABE, Deceased (Westport Bank and Trust Company, Administrator, C.T.A.)

v.

The UNITED STATES.

No. 115–70.

United States Court of Claims.

March 16, 1973.

Lawrence C. Moore, Washington, D. C., attorney of record, for plaintiff. Walter M. Andrew, Jr., Westport, Conn., of counsel.

Kenneth R. Boiarsky, Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton, for defendant. Gilbert E. Andrews and Joseph Kovner, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASH- IWA, KUNZIG, and BENNETT, Judges.

## OPINION

PER CURIAM:

This case was referred to Trial Commissioner David Schwartz with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 134(h). The commissioner has done so in an opinion and report filed on August 2, 1972. Exceptions to the commissioner's opinion, findings and recommended conclusion of law were filed by plaintiff, defendant filed exceptions to certain findings and the case has been submitted to the court on oral argument of counsel and the briefs of the parties. Since the court is in agreement with the opinion and recommendation of the commissioner, with a modification by the court, it hereby adopts the same, as modified, as the basis for its judgment in this case as hereinafter set forth. Therefore, plaintiff is not entitled to recover and the petition is dismissed.

Commissioner Schwartz' opinion, with a modification by the court, is as follows:

■ This is a suit for the recovery of estate taxes and assessed interest, to a total of $30,346.45, paid by the estate of Eugene F. McCabe, who died in 1964. Three questions are presented: (1) what is the proper valuation of decedent's residence; it is held that the residence had the value fixed by the Commissioner of Internal Revenue; (2) whether a certain inter vivos trust was a transfer with such a retained life estate as made it properly includible in the gross estate under subdivision (1) of § 2036(a) of the 1954 Code; it is held that it was; and (3) whether a testamentary trust of which decedent's widow was a beneficiary failed to qualify, by virtue § 2056(a)(5) of the 1954 Code, for the marital deduction under § 2056(a); it is held that the trust does not qualify, for the reason that the wid-

ow's power of appointment was not exercisable by her alone and in all events.

A fourth issue sought to be raised is the propriety of the Commissioner's disallowance, as a deduction from the gross estate, of a widow's allowance paid pursuant to probate court order. This ground for refund was first mentioned in plaintiff's post-trial brief in this court; it was not raised in the administrative claim for refund and in the petition in this court. The failure to raise it before the Commissioner of Internal Revenue in the claim for refund bars its consideration in this judicial proceeding. Union Pacific R. R. Co. v. United States, 182 Ct.Cl. 103, 389 F.2d 437 (1968); 26 U.S.C. § 7422(a) (1964). True, plaintiff demanded, in both its claim for refund and in its petition in this court, the entire amount of the deficiency which had been assessed and paid, an amount which would be refundable only if the widow's allowance were a proper deduction. Numbers alone, however, cannot satisfy the rule that a claim for refund must set out the grounds upon which it rests. Plaintiff cannot make out a case, either before the Commissioner or in court, merely by demanding more money than is warranted by the allegations. H. H. Hornfeck & Sons, Inc. v. Anderson, 60 F.2d 38, 41 (2d Cir., 1932).

### 1. *Valuation of Decedent's Residence*

■ Decedent's residence, jointly owned with his wife, was valued at $57,500 in the tax return filed by his estate and at $64,500 by the Commissioner of Internal Revenue.

The two appraisers appointed by the probate court testified in support of their valuation of $57,500. The Government's expert testified to a valuation of $67,000. The qualifications of the respective appraisers, the bases for their valuation and the facts as to what they considered, and how thoroughly, are set out in the accompanying findings.

Plaintiff's appraisers did a perfunctory job of their appraisal. Notably, they failed to take into account the increase in value which would be gotten by a quite feasible subdivision into three parcels of the 6.8 acre lot on which decedent's house stands. The Government's witness, on the other hand, has impressive qualifications, made an industrious appraisal and provided evidence in support of his opinion that the house and lot were worth $67,348 on a cost-reproduction basis and $67,000 on a direct-market-comparison or comparable-sales basis.

On the basis of that witness' testimony, it is found that the property—land and improvements—was worth at least $64,500, the figure accepted by the Commissioner of Internal Revenue. It is unnecessary to determine whether the property was any more valuable than that. Accordingly, plaintiff is not entitled to recover on the issue of valuation.

### 2. *The Inter Vivos Trust*

On May 16, 1940, decedent by an indenture created a trust of insurance policies on his life with a total face value of $75,000. His wife thereafter transferred to this trust shares of stock worth $6,300. The trust instrument provided that the income from the trust was to be paid to decedent's wife for life, with a remainder to decedent's children.[1] The

---

1. Among the provisions of the instrument were:

"The Trustees shall take receive and hold the policies of insurance set forth in Schedule "A", attached hereto and made a part hereof, together with instruments of assignment or change of beneficiaries upon said policies duly executed in duplicate, together with any other securities therein set forth and any policies or other securities which may from time to time be deposited with them under the terms of this Indenture, together with the proceeds of said insurance policies, IN TRUST NEVERTHELESS, for the following purposes and uses, and subject to the terms, conditions, powers and agreements as hereinafter set forth, namely:—

\*    \*    \*    \*    \*

"Second: To invest and re-invest funds coming into their possession in such

trustees were Russell J. Hopkins, president of the Titusville Trust Co. of Titusville, Pennsylvania, and the Trust Company. The value of the assets in the trust as of the date of decedent's death in 1964, exclusive of any corpus contributed by his widow, Dorothy McCabe, was $18,298.66.

The question for decision is the includibility of this sum in decedent's gross estate under § 2036(a) of the 1954 Code. More precisely, the question is whether in making the transfer the decedent had in the words of the section, retained for his life "the possession or enjoyment of, or the right to the income from, the property," within the meaning of subdivision (1) of § 2036(a). The section reads as follows (26 U.S.C. § 2036(a) (Supp. V, 1959–1963)):

§ 2036. *Transfers with retained life estate*

(a) *General rule.—*

The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

(1) the possession or enjoyment of, or the right to the income from, the property, or

(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

The decision herein is that decedent retained such a life interest as is described in subdivision (1) of § 2036(a). A contention of taxability under subdivision (2) of § 2036(a), based upon the retention in Article Twelfth (note, *supra*) of the power to substitute the donor as trustee, therefore need not be considered.

At the time the trust was created in 1940, decedent was employed by the Tidewater Associated Oil Company. He retired as a vice president in 1959. Upon his retirement, he ceased to re-

---

securities as they may deem proper and suitable for the investment of trust funds,

\* \* \*

"Fifth: In the event of illness or emergency, should the income not be sufficient to provide proper care and comfort for the Donor's wife, Dorothy M. McCabe, the Trustees are hereby directed to use so much of the principal of the trust fund as in their judgment may be necessary to properly care for the aforesaid Dorothy M. McCabe. Also, should any of the Donor's children desire a college or higher education, and the income from the trust be not sufficient to provide such education, the Trustees are authorized, upon the written consent of the Donor's wife, Dorothy M. McCabe, to use so much of the principal as in their opinion may be needed for such educational purposes. And should Dorothy M. McCabe be not living, then the Trustees may use so much of the principal of the trust fund as in their opinion is necessary and expedient for the education of the Donor's children.

\* \* \* \* \*

"Ninth: The Donor further reserves the right to add at any time other policies of insurance to the trust fund created, and without the consent or approval of the Trustees to add to this trust securities or monies at any time.

"The Donor understands and agrees that the trust shall be operative only with respect to the proceeds of such policies of insurance as may be due and payable in the event of his death, after the deduction of all charges against said policies by way of advances, loans, or otherwise, either in favor of the Trustees or the insured.

\* \* \* \* \*

"Twelfth: The Donor has the right to substitute for Titusville Trust Company and Russell J. Hopkins, as Trustees, anyone whom he desires, except, however, that such substitution of appointment cannot be made during any time in which he has indebtedness to the within named Titusville Trust Company."

ceive his annual salary of $30,000, and became a consultant at a compensation which does not appear.

Following decedent's retirement in 1959, the cash surrender value of the insurance policies in the trust was taken by the trustees, by mutual agreement of decedent, decedent's wife and the trustees. Substantially all of the dealings with regard to the trust took place between decedent and the individual trustee, Russell J. Hopkins, who was his longtime friend and business associate.

Between 1959 and 1964, the year of decedent's death, funds from the corpus of the trust were devoted by the trustees as follows:

| Date | Amount | Purpose |
|---|---|---|
| January 1959 ........ | $3,000.00 | Deposit to decedent's checking account upon written authorization of his wife, Dorothy McCabe. |
| February 1959 ........ | 30,980.74 | To pay a joint note of decedent and his wife for $10,000, and a note of the decedent for $20,980, both held by the Titusville Trust Company. |
| June 1959 ............ | 19,828.88 | Purchase of 800 shares of Mission Development Stock. |
| September 1960 ....... | 3,163.08 | Deposit to decedent's checking account upon written request of Dorothy McCabe. |
| May 1961 ............. | 3,800.00 | Deposit to decedent's checking account upon request of Dorothy McCabe. |
| February 1963 ........ | 4,617.07 | Do. |

At the trial, decedent's widow could not recall ever having seen the 1940 trust agreement, nor could she recall her husband's having explained its terms to her. She was certain that no one at the Trust Company had ever done so.

None of decedent's children was aware of the 1940 trust agreement except through informal family conversations. With some small exceptions, they did not know the nature or amount of the trust assets, the nature of their respective interests, the identity of the trustees, the taking of the cash surrender value of the life insurance policies or the amounts withdrawn from the trust. They were not consulted with regard to any of the transactions regarding the trust, nor was any evidence presented which would show that any of the four children received money from their parents or from the trust for support, medical assistance or educational purposes during the period 1959–1964.

Prior to decedent's retirement in 1959 and subsequent to his death on August 23, 1964, no distributions of trust corpus were requested or made. From 1959 until decedent's death, all requests for cash distributions of trust corpus (set out in the foregoing table) were prepared by and at the direction of decedent, for his wife's signature. The distributions were deposited in decedent's checking account, by the trustees acting upon Dorothy McCabe's request, and were applied to the joint and personal use and benefit of decedent and his wife, including the costs of children's weddings and personal vacations.

■ There is no question but that decedent did not, by the terms of the instrument of transfer, expressly retain the life interest that would make § 2036(a)(1) applicable. A retained life interest need not, however, necessarily be created by the express terms of the instrument, nor need it be legally enforceable, for § 2036(a)(1) to apply.[2]

2. The origin of section 2036(a) is a provision of the Revenue Act of 1918 including in decedent's gross estate property of which a decedent made a transfer "in-

McNichol's Estate v. Commissioner, 265 F.2d 667 (3d Cir.), cert. denied, 361 U.S. 829, 80 S.Ct. 78, 4 L.Ed.2d 71 (1959). A retention of the "possession or enjoyment of, or the right to the income from, the property" may be inferred from the circumstances attendant upon the transfer and the manner in which the transferred property is used. Skinner's Estate v. United States, 316 F.2d 517 (3d Cir. 1963); see also Barlow v. Commissioner, 55 T.C. 666 (1971).

Both *McNichol* and *Skinner* were factually different from the instant case. *McNichol* involved a purported outright gift of income-producing property by a father to his children, coupled with a contemporaneous oral agreement between the donor and the donees that the donor would continue to receive the income from the property until his death. In *Skinner,* the trust instrument gave the trustee discretion to pay the income from the trust to the settlor during her lifetime, a discretion which he exercised in her favor until her death.

■ The facts of the instant case however show as clearly as in those cases a retained life interest. Decedent was not a detached settlor, and the trustee (to all intents the individual trustee was the sole trustee) did not act exclusively for the benefit of the ostensible beneficiary, Mrs. McCabe. The dealings among the three of them—decedent, trustee and wife—in my opinion raise an inference of a prearrangement that decedent should retain control for his benefit so long as he lived. In these dealings, Mrs. McCabe and the trustee recognized and surrendered to the decedent's interests, throughout.

After decedent retired in 1959 (and his income thereby diminished) substantial cash distributions were at four separate times made from the trust corpus to the decedent, presumably a settlor who had parted with his interest and had no rights. After the first of these distributions, trustee Hopkins requested that decedent have his wife execute "a letter * * * authorizing the $3,000 transfer to your [decedent's] checking account." The succeeding cash withdrawals were made pursuant to the written request of decedent's wife, who additionally directed that these sums be deposited in her husband's checking account.

The only provision of the trust under which the corpus could be invaded for the benefit of decedent's wife, Article Fifth (note 1, *supra*) was conditioned on her illness or an emergency, and an exercise of judgment by the trustee as to the amount, additional to income, necessary to provide proper care for Mrs. McCabe. This was ignored. The trustee made no inquiry into her situation to determine whether she was beset by illness or emergency when she requested distributions of corpus; and plaintiff provides no basis for any conclusion that the uses to which the distributions were put fall within the provisions of Article Fifth for Mrs. McCabe's benefit. Rather, it appears that the three parties at all times treated the decedent as having the right to receive the trust corpus, exercisable on the mere formality of his wife's demand.

Consistent with this conclusion is the language in Mrs. McCabe's second letter

tended to take effect in possession or enjoyment at or after his death * * *." § 402(c), Revenue Act of 1918, 40 Stat. 1097 (1919). The Supreme Court in 1930 held a transfer with a life estate reserved to the donor after the expiration of a life estate to donor's spouse (remainder to donor's children) not within the foregoing statute (May v. Heiner, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826 (1930)), and reaffirmed this decision by announcing *per curiam* decisions construing successor statutes, in Burnet v. Northern Trust Co., 283 U.S. 782, 51 S.Ct. 342, 75 L.Ed. 1412 (1931); Morsman v. Burnet, 283 U.S. 783, 51 S.Ct. 343, 75 L.Ed. 1412 (1931); and McCormick v. Burnet, 283 U.S. 784, 51 S.Ct. 343, 75 L.Ed. 1413 (1931). Congress thereupon promptly enacted a provision reversing the holding (46 Stat. 1516 (1931)), which has since evolved into § 2036(a) of the 1954 Code.

requesting a distribution of corpus to her husband:

> In view of the rights and privileges granted to me under the above mentioned trust agreement, I now request that you permit me to withdraw from the trust the cash on hand, namely $3,163.08, depositing it in Titusville Trust Company to the credit of my husband Eugene F. McCabe. In consideration of so doing I hereby agree to protect and save the trustees harmless and free from any liability or any claim that may be made upon them by reason of releasing the above sum to me.

Similar language was contained in three of the four such letters she wrote, authorizing the four noted cash distributions. None of the letters contained any statement as to the purposes for which the money was required.

A pretended transfer to a wife, with the retention of a life estate by the husband so apparent from the facts as here, is the archetypal situation reached by subdivision (1) of § 2036(a). The property is includible in the gross estate.

### 3.   *The Testamentary Trust*

■   The issue in this last part of the case is whether one of the trusts created by the will, "Trust Fund A," is such a life estate with power of appointment in a surviving spouse as permits its value to be deducted from the gross estate. The precise questions are whether the power is exercisable by the surviving spouse "alone and in all events" and whether there is a power in any other person to appoint "to any person other than the surviving spouse." 26 U.S.C. § 2056(b)(5) (1958).[3] Only if the first question is answered in the affirmative, and the second in the negative, is the value of the interest deductible from the gross estate under § 2056(a).

Article Second of the will (set out in the note[4]) divided the estate equally be-

---

3. Section 2056(b)(5) reads as follows:
"(5) Life estate with power of appointment in surviving spouse.—
   "In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse—
   (A) the interest or such portion thereof so passing shall, for purposes of subsection (a), be considered as passing to the surviving spouse, and
   (B) no part of the interest so passing shall, for purposes of paragraph (1)(A), be considered as passing to any person other than the surviving spouse.
   "This paragraph shall apply only if such power in the surviving spouse to appoint the entire interest, or such specific portion thereof, whether exercis-

able by will or during life, is exercisable by such spouse alone and in all events."

4. Article Second provides:
   "Second: I give, devise and bequeath all of my property, real, personal and mixed, of every description and wherever the same may be situate and of which I may die seised or possessed, to the Titusville Trust Company, of Titusville, Pa., IN TRUST, NEVERTHELESS, for the following purposes:
   "My said Trustee shall divide my said estate into two equal portions, designating one portion as 'Trust Fund A' and the remaining portion as 'Trust Fund B.'
   "From the said 'Trust Fund A' my said Trustee shall pay the net income in at least quarterly installments, to my wife, Dorothy M. McCabe, for and during her natural life, giving and granting, however, to my said wife, the right, in her absolute discretion, to use such amounts out of the principal of said 'Trust Fund A' as she may request at any time and from time to time, without restriction. Any balance remaining in the said 'Trust Fund A' at the time of her death shall be added to and become a part of 'Trust Fund B'.
   "From 'Trust Fund B' my said Trustee shall pay the income from the said

tween two trusts, Trust Fund A and Trust Fund B, and provided that the income of Trust Fund A should go to the widow for her life, she to have power to "use" any part of the principal in her discretion, any balance remaining at her death to be added to Trust Fund B (in which, at that time, the income beneficiaries and remaindermen (at stated ages) would be decedent's surviving children and issue).

Section 2056(b)(5) of the 1954 Code (note 3, *supra*) requires, if a life interest with a power to appoint to a spouse is not to be included in the gross estate under § 2056(a), that the power to appoint be exercisable by the spouse "alone and in all events." Under the regulations the power is not exercisable "alone and in all events" unless it falls within one of three categories, one of which is that the power be "fully exercisable in her own favor at any time following the decedent's death (as, for example, an unlimited power to invade)." Moreover, the power is not exercisable "in all events" if there be any restrictions on the power to consume the property, as for instance "if a power of invasion is exercisable only for the spouse's support, or only for her limited use," or if the trustee has power "to appoint a part of the interest to any person other than the surviving spouse." Treas.Reg. § 20.-2056(b)–5 (1964).[5]

Trust Fund, in at least quarterly installments, to my wife, Dorothy M. McCabe, for and during her natural life, and upon her death, or in the event she shall have predeceased me, to my children, in equal parts, share and share alike. Should any child or children of mine predecease me, the issue of such deceased child or children shall receive the portion of income and principal its or their parent would have received if living. Should any child or children of mine leave no issue then surviving, then in that event, the proportionate share of such child or children shall revert to and become a part of the principal of said 'Trust Fund B', to be divided equally among my surviving children and/or the issue of my deceased child or children, if any.

"As each of my children arrives at the age of twenty-five (25) years, such child shall receive one-third (⅓) of its proportionate share of the said 'Trust Fund B'.

"As each of my children arrives at the age of thirty (30) years, such child shall receive one-third (⅓) of its proportionate share of the said 'Trust Fund B'.

"As each child arrives at the age of forty (40) years, such child shall receive his or her remaining proportionate share of the said 'Trust Fund B.'

"In the event I should die without child or grandchild me surviving, I give, devise and bequeath all of my said 'Trust Fund B' to my wife, Dorothy M. McCabe, absolutely, and in the event my said wife should also predecease me, it is my will that my property go to and be divided in accordance with the Intestate Laws of the State of Connecticut."

5. Section 20.2056(b)–5 of the Regulations reads in pertinent part as follows:

"(g) *Power of appointment in surviving spouse.* (1) The conditions set forth in paragraph (a)(3) and (4) of this section, that is, that the surviving spouse must have a power of appointment exercisable in favor of herself or her estate and exercisable alone and in all events, are not met unless the power of the surviving spouse to appoint the entire interest or a specific portion of it falls within one of the following categories:

"(i) A power so to appoint fully exercisable in her own favor at any time following the decedent's death (as for example, an unlimited power to invade); or

\* \* \* \* \*

"(3) \* \* \* Likewise, if there are any restrictions, either by the terms of the instrument or under applicable local law, on the exercise of a power to consume property (whether or not held in trust) for the benefit of the spouse, the power is not exercisable in all events. Thus, if a power of invasion is exercisable only for the spouse's support, or only for her limited use, the power is not exercisable in all events. In order for a power of invasion to be exercisable in all events, the surviving spouse must have the unrestricted power exercisable at any time during her life to use all or any part of the property subject to the power, and to dispose of it in any manner, including the power to dispose of it by gift (whether or not she has power to dispose of it by will).

\* \* \* \* \*

These conditions are not met, the Government first contends, because the widow's right, under Article second of the will (note 4, *supra*), to "use" amounts out of principal is restricted by an implied duty of good faith in favor of the remaindermen, and is thus not "fully exercisable in her own favor."

The nature of the interests created by the will is of course to be determined under Connecticut law. Treas.Reg. § 20.2056(b)-5(e) (1964). A relatively recent case in the Supreme Court of Errors of Connecticut, the highest court of that state, dealt with the consequences of a clause closely similar to Article Second of the instant will, giving a life tenant apparent power to demand payment of the principal. Connecticut Bank and Trust Co. v. Lyman, 148 Conn. 273, 170 A.2d 130 (1961).

The trust in that case provided for a life interest in the settlor, then to his wife for her life, the trust to terminate on the death of the survivor and "the property constituting the same" to be distributed to the settlor's issue, per stirpes, and in default of issue to designated institutions. The clause in question permitted payments of principal by the trustee for the benefit of the widow as life tenant, on the widow's need or "at the written request" of the widow, as follows (148 Conn. at 276–77, 170 A. 2d at 132):

> * * * after the death of the * * * [settlor], payments of principal shall be made to or for the benefit of said Katharine R. Lyman either on the judgment of the Trustee as to their being needed because of her illness or absence or other emergency, or at the written request of said Katharine R. Lyman or for both of said reasons.

Soon after the death of the settlor, the widow presented a written request that the entire principal be paid to her forthwith. The trustee petitioned for instructions. On behalf of the remaindermen, it was claimed that while the widow could by a series of requests based on reasonable justification exhaust the principal, she could not do so without a showing of need or other justification.

The court held the will to express a dual intention with respect to invasion of the principal—the first, to allow the trustee on its own initiative to pay over principal on the basis of need, particularly useful in case the beneficiary were so disabled as to impair her judgment, and the second to order the trustee to pay over principal "at the untrammeled, written request of the beneficiary" (148 Conn. at 280, 170 A.2d at 133).

The widow as life income-beneficiary, the holder of an equitable and not a legal estate, was held neither an actual nor quasi trustee for the remaindermen. The presence of a remainder clause, the court said, was no indication of an intention to circumscribe an otherwise apparently unbridled power of invasion, and was at most an indication of the expectations of the settlor as to the use the widow would make of the unrestricted power of invasion.

While standards for a limitation on the exercise of the power of an income beneficiary to invade were, the court said, doubtless enforceable, the power to invade had been given unconditionally and would not be restrained (148 Conn. at 280–81, 170 A.2d at 133–134):

> * * * Here, the power of withdrawal or invasion is general and unlimited, and is neither expressly, nor by implication, given for the beneficiary's support, comfortable maintenance or need, or for any similar purpose which would call for the exercise of a reasonable discretion in conform-

"(j) *Existence of a power in another.* Paragraph (a)(5) of this section provides that a transfer described in paragraph (a) is nondeductible to the extent that the decedent created a power in the trustee or in any other person to appoint a part of the interest to any person other than the surviving spouse. * * * * "

ance with expressed, or necessarily implied, standards, purposes or limitations. See, for instance, Little v. Geer, 69 Conn. 411, 415, 37 A. 1056. Courts will, of course, protect against an abuse of discretion in any equitable matter. Conway v. Emeny, 139 Conn. 612, 619, 96 A.2d 221. Here, however, no discretion is involved. The power to request payments of principal is neither based on, nor does it call for, the exercise of discretion in conformance with any standards, purposes or limitations, express or implied. The right to invade is left to the defendant's desires.

This Connecticut decision is conclusive on the nature of the right of the widow under Article Second of the instant will, which gives the widow "the right, in her absolute discretion, to use such amounts out of the principal of said 'Trust Fund A' as she may request at any time and from time to time, without restriction." She is not to be limited, in the exercise of her rights, by any duty to the remaindermen. No conditions having been imposed on "her absolute discretion," she is entitled under the *Lyman* case to request payment to her of any or all of the corpus at any time. As the court said, "The right to invade is left to [the widow's] desires."

The power is thus "an unlimited power to invade" and is "fully exercisable in her own favor" under § 2056(b)–5(g)(i) of the regulations, note 5, *supra*.

■ Left for decision is another contention of the Government—that the trustee has the power in certain circumstances to pay out corpus for the benefit of decedent's children. This argument is based upon Article Fourth of the will, set out in the note [6] which gave the trustee discretionary power to use the portions of the principal deemed necessary to meet any emergency, illness or other similar situation "necessitating any unexpected need of cash for any beneficiary or any respective share herein created."

The trustees' power is under Article Fourth exercisable "[d]uring the continuance of the Trusts" in case of need of "any beneficiary or any respective share herein created." These words of course include the remaindermen, the decedent's children. Article Second provided that on the death of the widow, the balance in Trust Fund A was to be paid into Trust Fund B, where, the life income-beneficiary (the widow) of Trust Fund B then being dead, the decedent's children would take the income of Trust Fund B and be entitled to receive distributions of ⅓ of their respective shares of corpus at the ages of 25, 30 and 40.

The clause is quite clear, and the clarity makes it unnecessary to consider the contention, made with citation of Virginia National Bank v. United States, 443 F.2d 1030 (4th Cir. 1971), that patent ambiguity permits a resort to parol evidence, outside the will, to show the intent of the testator.

Until the widow dies or draws down the entire Trust Fund A by her demands (as permitted by Article Second as heretofore construed), the children remain permissible objects of the trustees' discretionary powers to invade under Article Fourth and devote to the use

6. Article Fourth provided:
    "Fourth: During the continuance of the Trusts hereby created, and at the end thereof, for the purpose of making final distribution, the Trustee shall have and possess the following powers:
    "1. To meet any emergency, accident, sickness, surgical operation, prolonged illness, or any other similar situation which may arise, necessitating any unexpected need of cash for any beneficiary or any respective share herein created, the said Trustee is authorized to use such portions of the principal of these Trust Estates as said Trustee, in its sole discretion, may deem necessary for such purposes, as the particular occasion demands."

of the children any part of the principal of Trust Fund A deemed necessary for the children's "unexpected need of cash" by reason of an emergency, illness or similar situation. The possibility that the widow can deplete Trust Fund A, end the trust and thereby destroy the remainders does not affect the continued existence of those remainders in the interim.

While the Connecticut court in *Lyman* did not have before it a clause authorizing invasion for the benefit of remaindermen, it did have occasion to comment on the remainders in the will before it, in terms which are relevant presently. In discussing the effect of the life estate on the remainders, the court stated (citing 2 Scott on Trusts (2d ed.) p. 952) that while the remainder might amount to little or nothing through exercise of the wholly unlimited power of the widow to invade, the gift over was not invalidated. The trust, defendant conceded, "would persist so long as any of the principal remained and would operate to give any principal remaining at her death to the remaindermen." 148 Conn. at 280, 170 A.2d at 133. *Lyman* confirms that the remainders to the children, here, continue though the widow may at any time demand payment of all the principal.

The validity of the remainders, and the power of the trustee to pay part of the principal to the children, means that the trustee could in some circumstances "appoint a part of the interest to any person other than the surviving spouse" (Regulations, note 5, *supra*), and thus that in the words of § 2056(b)(5) (note 3, *supra*), there is a "power in any other person to appoint any part of the interest * * * to any person other than the surviving spouse." Therefore, the widow's rights are not exclusive under § 2056(b)–5, and the interest to her therefore does not qualify under § 2056(a) for the marital deduction.

The several issues having been decided against the plaintiff, the petition should be dismissed.

**MATHER CONSTRUCTION COMPANY et al.**

v.

**The UNITED STATES.**

No. 481–69.

United States Court of Claims.
March 16, 1973.

