ESTATE OF VIRGIL C. SULLIVAN, DECEASED, JAMES W. PETER, PERSONAL REPRESENTATIVE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Sullivan v. Commissioner
Docket No. 12084-91
United States Tax Court
T.C. Memo 1993-531; 1993 Tax Ct. Memo LEXIS 542; 66 T.C.M. (CCH) 1329; November 17, 1993, Filed *542 Decision will be entered under Rule 155. For petitioner: Charles T. Parks, Jr., David J. Shannon, Richard C. Schmoker, and David R. Brennan. For respondent: Genelle F. Forsberg. GERBER
GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent, by means of a statutory notice of deficiency, determined a $ 510,581 Federal estate tax deficiency. The issue for our consideration is whether within the meaning of section 2036(a) [1] Virgil C. Sullivan (decedent) retained the possession or enjoyment of, or the right to the income from, transferred trust assets. In resolving these questions we consider: (1) Whether decedent retained a right to use the income of the trust to discharge a legal obligation to support his wife, and (2) whether decedent retained an interest in the trust corpus. FINDINGS OF FACT
*543 Some of the facts have been stipulated and the stipulation of facts and attached exhibits are incorporated by this reference. Virgil C. Sullivan, a resident of the State of Minnesota, died on December 20, 1986, survived by his widow, Christine Sullivan (Christine), three sons from his prior marriage, and three grandchildren. At the time of his death decedent was 82 years of age and Christine was 79 years of age. James W. Peter, the personal representative of the Estate of Virgil C. Sullivan, resided in Minneapolis, Minnesota, at the time the petition in this case was filed. Decedent's first wife had been sick for several years as a result of a long and debilitating illness. After his first wife's death, decedent and Christine were married. At the time of her marriage to decedent Christine was 60 years of age and had not previously been married. Christine has no children of her own and has little or no relationship with decedent's three sons, none of whom live in close proximity to her. Christine has two sisters who live in Washington State and several nieces and nephews who also live in the Western United States. Decedent was a knowledgeable and successful investment counselor *544 having served as the chief financial officer of IDS and associated mutual funds from 1954 to 1960. Upon leaving IDS, decedent became a self-employed financial consultant, and among the clients to whom he provided investment advice were two wealthy and prominent families. In 1964, decedent became a special adviser to the World Bank. In addition to his private consulting practice, decedent served on the board of directors of various profit and nonprofit corporations. During the entire duration of their marriage, decedent and Christine lived in a three-bedroom apartment in Minneapolis. The apartment rent for 1986 and 1987 was $ 14,520 and $ 14,650, respectively. For the period under consideration, decedent and Christine were members of a Minneapolis lunch and social club and a golf club. The lunch and social club expenses were predominantly for decedent's consulting business purposes. After decedent's death, Christine continued to reside in the same apartment, and she did not use the lunch and social club. The joint living expenses of decedent and Christine for 1986 and the individual living expenses of Christine for 1987, excluding business expenses, estimated tax payment, *545 gifts to charities and family, and professional accounting and legal services, were: 1986
1987
Expenses
Amount
Amount
Rent
$ 14,520
$ 14,650
Power and telephone
1,398
1,350
Housekeeper
1,146
1,100
Golf club
8,930
3,400
Grocery store
359
1,100
Clothes
1,060
1,000
Auto expense and insurance
670
--
Medical
5,722
1,100
Theatre
115
--
Repairs
93
--
Safe deposit
25
--
Miscellaneous
624
124
Property insurance
128
128
Umbrella insurance coverage
143
--
Cash
5,800
300
Television and furniture
671
555
Hairdresser
--
119
Newspaper
--
131
Clothes cleaning
--
32
Travel
--
802
Total
41,404
25,891
At some point Christine was diagnosed as having Parkinson's disease. [2] In the years following decedent's death Christine's physical condition continued to decline and at the time of trial she resided in a nursing home. Decedent created an irrevocable trust (the Trust) under agreement *546 dated December 29, 1967, by and between decedent as settlor, and decedent and Robert Don (Don) as trustees. Don and decedent were close friends. They had known each other since 1946 when Don, a high school graduate, began work as decedent's assistant at the brokerage firm of Blair & Co. When decedent left Blair & Co. in 1954, Don remained having been made a partner 2 years earlier. In 1968, decedent, who at that time was a member of the board of directors of Pitcairn Co., recommended Don for employment there and Don remained so employed until his 1984 retirement. Attorney Robert Oelke drafted the Trust document pursuant to the instructions he received from decedent's attorney, Paul Christoferson, a more senior member in Oelke's law firm. Article I(A) of the Trust provides as follows: During the lifetime of Christine Sullivan, wife of the Settlor, the Trustees shall pay to said Christine Sullivan the entire net income from the Trust Estate in quarterly or more frequent installments so long as she shall live, and in addition to such payments of net income, the Trustees shall pay to or expend for the benefit of said Christine Sullivan such sum or sums from the *547 principal of the Trust Estate as the Trustees, in the exercise of their discretion, may deem necessary or advisable from time to time to provide for her proper care, support, maintenance and health, taking into consideration her needs and the other sources of financial assistance, if any, which may be or may become available for such purposes.
Article I(B) provides that upon Christine's death all principal and undistributed income is to be distributed in equal shares to decedent's sons or their survivors. Article II provides: The Settlor having been fully advised in respect thereto, hereby expressly surrenders all right and power to amend, modify or revoke this trust in whole or in part, and does hereby irrevocably divest himself of all interests of whatever nature in and to any estate therein. Article III provides in pertinent part: The Trustees shall have the sole legal and equitable title to all properties at any time held, acquired or received by them under the terms of this agreement, subject to the conditions and provisions hereof. The Trustees shall have and exercise the exclusive management and control of the Trust Estate, and without limiting the generality of *548 the foregoing, they are vested with the following additional powers and discretions: * * * (K) To make payment of any funds by the terms hereof payable to or for the benefit of any minor or person determined by the Trustees to be unable to manage and care for his personal business affairs, at the sole discretion of the Trustees exercised from time to time in any one or more of the following ways: (1) directly for the support, maintenance, education and general welfare of such beneficiary, or (2) to the legal or natural guardian of such beneficiary, or (3) to any relative or friend of such beneficiary who shall have custody and care of the person of such beneficiary, or (4) directly to such beneficiary. * * *
Article IV of the Trust agreement provides that as long as the settlor is a cotrustee he has the exclusive right to exercise the powers and discretions granted to the trustees under the terms of article III. The Trust agreement provides that the Trust is to be construed under the laws of the State of Minnesota. From the time the Trust was created through decedent's death, Don neither requested nor was provided any documentation indicating how the Trust assets were *549 invested. Don and decedent had conversations regarding investments in general, but did not specifically discuss what investments were actually made. Decedent, with the assistance of professional advisers, handled all administrative matters of the Trust, including purchase and sale of investments, record keeping, and accounting matters. Don did not participate in any of these matters. At no time did Don discuss or question decedent about the amounts that were paid to Christine out of the Trust, nor was he provided with any information or documentation in this regard. From its creation in 1967 through decedent's death, Don did not receive any trustee fees from the Trust. The Trust assets consisting of cash and marketable securities had a value at the time of decedent's death of $ 1,032,184.72. Excluding the value of the assets of the Trust, petitioner's Form 706 reflects a gross estate of $ 3,121,738. At the time of decedent's death accrued but undistributed income for 1986 in the amount of $ 70,429 remained in the Trust. For 1986, excluding the final 11 days, decedent and Christine's joint Federal income tax return reflected the following sources of taxable income for each: *550 Decedent Christine
Income Source
Amount Amount Interest income
$ 110,517 $  48,205
Dividends
15,491 1,536
Net Schedule C
20,541 Capital gain (loss)
(9,278)
7,616
Trust income
70,429
Annuities/pension
1,439
Social Security benefits
19,416 6,090
Total
156,687 135,315
In addition to the above sources of income, decedent also received approximately $ 95,000 of interest from municipal bonds during 1986. Decedent and Christine's Federal and State income tax for 1986 was $ 91,007 and $ 7,434, respectively. Christine's sources of income for 1987, were, as follows: Income Source
Amount Interest income
$  74,465
Dividends
5,799
Annuities/pension
1,439
Social Security benefits
16,907
Trust income
66,775
Total
165,385
Christine's Federal and State income tax for 1987 was $ 40,377 and $ 9,039, respectively. OPINION Section 2036(a) [3] provides that the value of the gross estate shall include the value of all property transferred by trust or otherwise with respect to which the decedent has retained for his life or a period which did not in fact end before his death (1) the possession or enjoyment of, or right to income from the *551 property, or (2) the right, either alone or in conjunction with any other person, to designate the persons who shall possess or enjoy the property or the income therefrom. The purpose of section 2036 is to impose the estate tax on property which was transferred during the decedent's life but in which the transferor retained until his death the right to economic benefit. Estate of Pardee v. Commissioner, 49 T.C. 140, 149 (1967). Section 2036(a) reflects a "legislative policy of subjecting to tax all property which has been the subject of an incomplete inter vivos transfer." United States v. O'Malley, 383 U.S. 627, 631 (1966). *552 Respondent's position is that decedent retained the right to use both trust income and corpus to discharge his legal support obligations within the meaning of section 20.2036-1(b)(2), Estate Tax Regs. [4] Respondent contends that this retained right constitutes "possession and enjoyment", and therefore, trust income and corpus are includable in the gross estate under section 2036(a)(1). Petitioner maintains that decedent retained no rights in trust income and further argues that section 2036(a)(1) does not apply to retained interests in the corpus of income-producing property. *553 1. The Application of Section 2036 -- Trust Income
The trust income would be considered as retained by the decedent under section 2036 if it could be applied toward discharging decedent's legal obligation to support his spouse during his lifetime. Sec. 20.2036-1(b)(2), Estate Tax Regs. Respondent maintains that under article III(K) of the Trust decedent retained the right to make payments directly for the support and maintenance of his wife in the event of her incapacity. Petitioner argues that article I of the Trust grants outright all income from the Trust to Christine and that article III(K) is merely to facilitate payment of article I. Respondent agrees that article I(A) provides for an income interest that is not limited to decedent's wife's support and maintenance, but contends that decedent reserved an enforceable right to have the income applied toward his wife's support under article III(K). Respondent relies upon Richards v. Commissioner, 375 F.2d 997 (10th Cir. 1967), affg. T.C. Memo. 1965-263, and Estate of Lee v. Commissioner, 33 T.C. 1064 (1960) to support the argument *554 for inclusion under section 2036(a)(1). It is well established that one spouse may make a gift to the other spouse without affecting their duty of support, and there is no presumption that such a gift is in discharge of the donor's marital duty. Colonial-American National Bank v. United States, 243 F.2d 312, 314 (4th Cir. 1957). However, where it is clear from the trust document that the trust property is to be applied to discharge a support obligation, the trust property is includable in the decedent's gross estate. Commissioner v. Dwight's Estate, 205 F.2d 298 (2d Cir. 1953), revg. 17 T.C. 1317 (1952). Inclusion is also warranted when trust income may be applied at the settlor's discretion to discharge a legal obligation by virtue of the settlor's powers as trustee. Estate of Pardee v. Commissioner, supra at 148-149; Estate of McTighe v. CommissionerT.C. Memo. 1977-410. Inclusion is also appropriate where it may be inferred from the circumstances attendant upon the transfer and the manner in which the transferred property is used that decedent retained *555 "possession or enjoyment of, or the right to income from, the property". Estate of McCabe v. United States, 201 Ct. Cl. 243, 475 F.2d 1142, 1147 (1973); Skinner's Estate v. United States, 316 F.2d 517 (3d Cir. 1963); Estate of Barlow v. Commissioner, 55 T.C. 666, 670 (1971). While State law determines the legal interests and rights created by a trust instrument, Federal law determines the Federal tax consequences of those interests and rights. Morgan v. Commissioner, 309 U.S. 78, 80 (1940), amended on denial of rehearing 309 U.S. 626 (1940); Estate of Vissering v. Commissioner, 96 T.C. 749, 755-756 (1991), revd. and remanded on other grounds 990 F.2d 578 (10th Cir. 1993); Estate of Little v. Commissioner, 87 T.C. 599, 601 (1986). Here, in accord with the Trust agreement, Minnesota law governs the construction of the interests created. The Minnesota courts have well established legal principles governing construction of trust *556 instruments. In re Trusteeship Under Agreement With Mayo, 105 N.W.2d 900, 903 (Minn. 1960). In construing trust instruments, "One of the court's highest duties is to give effect to the donor's dominant intention as gathered from the instrument as a whole." Id. (citing In re Crosby's Will, 28 N.W.2d 175 (Minn. 1947)). In determining the donor's intent the court first looks to the language used in the trust instrument. In re Watland, 300 N.W. 195, 198 (Minn. 1941). The donor's intent, as expressed in the language of the trust, dominates construction; if there is no ambiguity in language when read in light of the surrounding circumstances, extrinsic evidence of a trustor's intent is not allowed. In re Hartman, 347 N.W.2d 480 (Minn. 1984); In re Wiedemann, 358 N.W.2d 139 (Minn. Ct. App. 1984). The circumstances here lead us to conclude that the Trust was not designed to discharge or relieve the decedent of his legal obligation to support his wife. The disposition clause of article I in clear and unambiguous language directs *557 the trustee to pay the income to the wife. It is an unconditional gift and is not limited for support. A grantor is not deemed to have retained a right to trust income where, as here, it is payable to a wife or child without any restriction that it be used for the beneficiary's support or applied toward the discharge of a legal obligation of the grantor. Estate of Lee v. Commissioner, 33 T.C. at 1067, 1069 (and cases cited therein). Article II of the Trust instrument also supports the conclusion that the donor did not reserve a right to direct that the income be applied to his wife's support or restricted for that purpose. Article III is more logically interpreted as an administrative provision due to its relative position within the Trust instrument; i.e., following the dispositive provisions of trust income in articles I and II. [5] This interpretation is supported by the fact that the Minnesota Trustees' Powers Act in enumerating the administrative powers of a trustee provides a provision similar to article III(K) to facilitate payment. Minn.Stat. sec. 501B.81(25) (1989). *558 Respondent also relies on Rev. Rul. 85-35, 1985-1 C.B. 329, [6] in arguing that article III would restrict the trustees from using the income for any purpose other than her support in the event of Christine's incapacity. That ruling considered a payment clause similar to the one here, but in the context of section 2056(b)(5), which provides for a marital deduction when a surviving spouse receives a lifetime income interest coupled with a general testamentary power to appoint the trust corpus and no other person has the power to appoint any part of the property to any person other than the surviving spouse. Respondent concluded in the ruling that the requirements of section 2056(b)(5) were satisfied stating: The purpose of the state statute and facility of payment clause is to make certain that the beneficiary has the beneficial ownership of the trust income and to provide protection and assistance to the beneficiary if the beneficiary becomes legally disabled. The trust income is payable to A or, if A becomes legally disabled, to or for the benefit of A. The fiduciary standards imposed by State X and general principles of trust law *559 prevent the abuse of the powers of the trustee, and constrain the conduct of any third party distributee, thus ensuring that all trust income will be expended for A's benefit. No amount of trust income may be paid for the benefit of a third person. * * * [ Rev. Rul. 85-35, 1985-1 C.B. 329.]
Respondent contends that under article III(K) decedent, as the sole trustee, would have been required to apply the funds directly to Christine's support and maintenance and would be precluded from distributing funds to third parties as Christine would have been free to do if she were capable. Respondent asserts that it is precisely for this reason that the facility of payment provision in Rev. Rul. 85-35, 1985-1 C.B. 329, *560 satisfies section 2056(b)(5). However, the requirements of section 2056(b)(5) are met in the revenue ruling not because the income is restricted to the "support" of the surviving spouse, but because the facility of payment provision ensures that the income be expended for her benefit. Similarly, article III(K) makes certain that, as the income beneficiary, Christine, in the event of her incapacity, continues to enjoy the beneficial ownership of the Trust income. Accordingly, we disagree with respondent and hold that decedent did not retain enjoyment of the Trust income for purposes of section 2036(a)(1). 2. The Application of Section 2036 -- Trust Corpus
Petitioner contends that the wording of section 2036(a)(1) limits the section's application to non-income-producing property or income from income-producing property. It is petitioner's position that section 2036(a)(1) is inapplicable to income-producing property even if decedent retained the right to satisfy his support obligations from principal. Petitioner contends the statute does not apply to interests in the principal of income-producing property in trust. Respondent argues that petitioner's interpretation is *561 too narrow and that if decedent retained possession or enjoyment of income-producing property then the property is includable in the gross estate under section 2036(a)(1). We agree with respondent. Section 2036(a)(1) contains three descriptions under which an interest in property will be included in the gross estate: "(1) if the decedent retains the 'possession' of the property transferred or (2) 'enjoyment' of the property or (3) the 'right to the income' from the property." Skinner's Estate v. United States, 197 F. Supp. 726, 728 (E.D. Pa. 1961), affd. 316 F.2d 517 (3d Cir. 1963). These statutory standards for inclusion are stated in the alternative and have not been read in a manner which would preclude retained interests in income -- producing properties. See Estate of McCabe v. United States, 201 Ct. Cl. 243, 475 F.2d 1142 (1973) (inclusion based on retained right to use income -- producing trust corpus); Estate of McNichol v. Commissioner, 29 T.C. 1179, 1183 (1958), affd. 265 F.2d 667, 671 (3d Cir. 1959) (interpreting *562 section 811(c)(1)(B), the forerunner of present section 2036(a)(1), right to income does not limit scope of the alternative possession and enjoyment provision). In Commissioner v. Estate of Church, 335 U.S. 632 (1949), the Supreme Court, after reviewing the legislative history of the "possession and enjoyment" provision of section 811(c), repudiated the reasoning of three of its former decisions [7] in favor of a less technical and more inclusive definition of the term. The Court stated that "The basic 'settled principle' now * * * is that where a trust agreement reserves the settlor's possession or enjoyment of part or all of the trust property until death, the value of the trust should be included in the settlor's gross estate." Commissioner v. Estate of Church, supra, at 651 n.11. *563 This Court in Estate of Linderme v. Commissioner, 52 T.C. 305, 309 (1969), relying upon Commissioner v. Estate of Church, supra, stated that "We take our cue from this mandate for a broad inclusion within the gross estate pursuant to section 2036(a)(1)." In distinguishing those cases where inclusion under section 2036(a) was upheld from those in which it was not, we stated: The presence of income from the property was simply a useful ancillary tool for decision rather than a limiting principle imposed as a matter of law. The retention of income was thus only an example, albeit a very clear one, of "possession or enjoyment." * * * [Estate of Linderme v. Commissioner, supra at 309.]
An analysis of section 2036(a)(1) cases where the principal was not included reveals that these cases were not decided under a narrow reading of the statute as a matter of law, but rather upon factual circumstances distinguishable from those present here. In those cases, either the settlor was not a trustee and/or the distributions (whether mandatory or discretionary) were not restricted to support *564 and maintenance. See Colonial-American Natl. Bank v. United States, 243 F.2d 312 (4th Cir. 1957); Estate of Mitchell v. Commissioner, 55 T.C. 576 (1970); Estate of Sherman v. Commissioner, 9 T.C. 594 (1947). Having concluded that section 2036(a) applies to a retained interest in income-producing property, we proceed to consider whether decedent retained the power to use trust corpus to discharge his duty of support. Petitioner contends that the Trust was not a support trust and the principal of the Trust was not to be so applied. Petitioner asserts that the Trust agreement requires the trustees to consider other resources available to Christine and that decedent's status as cotrustee precluded him from unilaterally exercising control over the Trust corpus. Should we find that a portion of the Trust is includable in the gross estate, petitioner also contends that the amount includable is limited to the portion needed to discharge decedent's support obligation. Respondent counters that where a possibility of corpus invasion exists, inclusion of the entire interest is warranted. Respondent *565 contends that remoteness and improbability of the exercise of the right does not preclude the application of section 2036(a)(1). Finally, respondent asserts that decedent's status as a cotrustee does not affect the applicability of section 2036(a)(1). Petitioner's argument that distributions in discharge of decedent's support obligations were effectively precluded because the trustees were required to consider Christine's other resources is misplaced. The trustees' ability to consider other sources of funds is not a bar to the exercise of discretion. Instead, it is a consideration or guideline in the exercise of that discretionary authority. Williams v. United States, 180 Ct. Cl. 417, 378 F.2d 693, 695-696 (1967). Under the principles of local law, a Minnesota court will not substitute its discretion for that of the trustee except when necessary to prevent the abuse of discretion. In re Campbell's Trusts, 258 N.W.2d 856, 866 (Minn. 1977). The likelihood that decedent would actually use the trust funds to satisfy his support obligations is irrelevant. If the decedent, as trustee, has the power to *566 discharge his legal obligations, that power triggers the applicability of section 2036(a)(1). Estate of Pardee v. Commissioner, 49 T.C. 140, 148-149 (1967). Section 2036(a)(1) does not require that the transferor pull the "string" or even intend to pull the string on the transferred property; all that is required is that the string exist. Estate of Pardee v. Commissioner, supra at 148; Estate of McNichol v. Commissioner, 29 T.C. 1179, 1183 (1958). Petitioner further contends the Pardee and McTighe cases are distinguishable because, as a cotrustee, decedent's power was exercisable only in conjunction with another. Petitioner argues that distributions from principal required joint action by decedent and Don, thus depriving decedent of unfettered control over the Trust assets. Petitioner contends that absent specific statutory language such as that found in sections 2036(a)(2) [8] and 2038(a), [9] joint power does not give the transferor sufficient dominion over the property to warrant inclusion. We cannot agree with petitioner, either as a matter of fact or law, that decedent *567 lacked the requisite dominion and control over the Trust corpus to avoid inclusion. While petitioner is correct that section 2036(a)(1), unlike sections 2036(a)(2) and 2038(a), does not contain the "in conjunction with any other person" language, this does not adequately address the question. The question of whether decedent retained the right to invade corpus is a factual one. Estate of McNichol v. Commissioner, supra.
While recognizing that the basis for this factual determination is not limited to the construction, either express or implied, of the words of the instrument *568 of transfer, id., we note that the Trust agreement, as it pertains to principal, does not contain an outright grant to Christine. Under the Trust, the trustees have discretion to invade principal for Christine's "proper care, support, maintenance and health". Unlike Trust income, the Trust principal could only be used for Christine's support. Upon Christine's death, principal and undistributed income were to be distributed to decedent's sons or survivors. Decedent's status as cotrustee does not preclude application of section 2036(a)(1). Inclusion under this section has been found applicable where the facts demonstrated that a cotrustee "for all intents and purposes in actual practice was the sole trustee." Estate of Paxton v. Commissioner, 86 T.C. 785, 813 (1986); Estate of Wedum v. Commissioner, T.C. Memo. 1989-184. See also Estate of McCabe v. United States, 201 Ct. Cl. 243, 475 F.2d 1142, 1147 (1973) (inference of prearrangement that decedent who was not a trustee was to retain control warranted inclusion); Estate of Klauber v. Commissioner, 34 T.C. 968, 973 (1960) *569 (power of settlor/cotrustee to invade principal was reversionary interest within section 2037 based on settlor's ability to dominate the nominal holder of the power). The facts of this case demonstrate that decedent was for all intents and purposes the sole trustee. The express language of article IV of the Trust agreement reflects decedent's intent to exercise exclusively the powers and discretions granted to the trustees under article III. Don was a nominal trustee; decedent at all times acted as sole trustee without consulting Don, who neither participated in nor was informed about the administration or activity of the Trust. Having held that section 2036(a)(1) is applicable, we must consider what portion of the assets are properly includable. Petitioner contends that inclusion is limited to that portion of trust assets necessary to satisfy decedent's support obligation. Respondent argues that the entire trust corpus is includable. Petitioner relies upon Estate of Pardee v. Commissioner, supra, wherein we stated: the right retained "for any period which does not in fact end before his death" under section 2036(a)(1) was the right to *570 satisfy his legal obligation of $ 500 per month for the two children under 18, and so much of the corpus necessary to generate this amount is includable in his gross estate. [49 T.C. at 150.]
Respondent seeks to distinguish Pardee because of her concession in Pardee that the full amount was not includable. Respondent also points out that in Pardee less than the total corpus was required to produce enough income to fulfill the taxpayer's support obligations. Respondent also relies upon Estate of Toeller v. Commissioner, 6 T.C. 832 (1946), affd. 165 F.2d 665 (7th Cir. 1948). [10] After determining that the taxpayer/grantor had an enforceable right to have the corpus invaded for his benefit, the Court addressed the question of the value of the interest reserved by the taxpayer. The Court in rejecting any limitation on the value of the interest to be included, stated that the term "'sickness or misfortune' used in the trust instrument is so broad in scope as to cover any conceivable form of calamity, physical, mental, or even economic, to which humanity is subject." Id. at 839. *571 In this case there is a qualification with respect to the amount of corpus invasion. Decedent, as trustee, had the power to use corpus for his wife's support, but only after considering her needs and her other sources of "financial assistance". Here, Christine's needs and her other sources of income have been shown with sufficient clarity to permit a valuation of the terms set forth in the trust for purposes of the inclusion of a discrete amount in decedent's gross estate. In addition, the Minnesota case law and statutes provide guidance as to the parameters for decedent's support obligation. Minn. Stat. Ann. secs. 518.552, 519.05 (West 1990); Meagher v. Hennepin County Welf. Bd., 300 Minn. 446, 221 N.W. 77 (1974); Bergh v. Warner, 47 Minn. 250, 50 N.W. 77 (1891). Decedent and Christine had 1986 after-tax joint income of about $ 190,000 and for 1987, Christine *572 had an after-tax income of $ 115,969. The living expenses for 1986 (jointly) and 1987 (Christine only) were $ 41,404 and $ 26,589, respectively, without considering decedent's gifts to charity or family. Christine's fixed sources of income are the Social Security payments and her pension of $ 6,090 and $ 1,439, respectively. The facts here are somewhat unique because it has been shown that the decedent and Christine lived most conservatively and well within their means. Additionally, their living expenditures have been shown to be consistent and unusually predictable. These factors aid in our ability to find that decedent's net obligation to support Christine under the terms of the trust would not exceed about $ 20,000 annually. Referring to section 20.2031-7, Estate Tax Regs., as in effect at the time of decedent's death, we use a 10-percent interest factor to reach the conclusion that $ 200,000 of the corpus would be necessary to fund decedent's $ 20,000 annual obligation to support Christine. Accordingly, $ 200,000 of the trust corpus is includable in decedent's gross estate. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code as of the date of decedent's death, and all rule references are to the Tax Court's Rules of Practice and Procedure, unless otherwise indicated.↩
2. The record is unclear as to whether this condition was diagnosed prior to decedent's death.↩
3. Sec. 2036. TRANSFERS WITH RETAINED LIFE ESTATE. (a) General Rule. -- The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death -- (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.↩
4. Sec. 20.2036-1(b)(2), Estate Tax Regs., provides: The "use, possession, right to the income, or other enjoyment of the transferred property" is considered as having been retained by or reserved to the decedent to the extent that the use, possession, right to the income, or other enjoyment is to be applied toward the discharge of a legal obligation of the decedent, or otherwise for his pecuniary benefit. The term "legal obligation" includes a legal obligation to support a dependent during the decedent's lifetime.↩
5. See Estate of McTighe v. Commissioner, T.C. Memo. 1977-410↩.
6. Revenue rulings are treated as the position of a party. United States v. Larionoff, 431 U.S. 864, 873 (1977); Crow v. Commissioner, 85 T.C. 376, 389↩ (1985).
7. Becker v. St. Louis Union Trust Co., 296 U.S. 48 (1935); Helvering v. St. Louis Union Trust Co., 296 U.S. 39 (1935); May v. Heiner, 281 U.S. 238↩ (1930).
8. Sec. 2036(a)(2) refers to the retention of the right "either alone or in conjunction with any person" to designate the persons who shall possess or enjoy the property or the income therefrom.↩
9. In the context of revocable transfers, sec. 2038(a) refers to the exercise of a power "by the decedent alone or by the decedent in conjunction with any other person" to alter, amend, revoke, or terminate.↩
10. This case was decided prior to the amendments of sec. 811(c).↩